Good morning. May it please the Court. Counsel. My name is Adam Hagedorn. I represent Roland Pour, Sr. and his two children, Kamanti Pour and Roland Pour, Jr. in this matter. What we have here is a case involving a unique set of facts, which when put to the language of the Liberty Mutual Insurance Policy demonstrates that Roland Pour's home was insured after a fire destroyed it in 2021. Well, the facts of this case are unique compared to some of the cases that were briefed before the Court, namely that Roland Pour owned the home. It was his only home, and his two — Well, home's not used in the policy, right, Counsel? Do you need to talk in terms of  Residence. Yes, Your Honor. Yeah. Yeah. Me better. Go ahead. Okay. Yes. It was his only residence. He did live in Georgia with his wife. However, he did own this residence in Champlin where his two sons, Kamanti and Roland, Jr., and his grandkids lived. Now, under — Was the — was there a — was the earlier divorce litigated, or was it settled? I don't have that fax, Your Honor. So we don't have in the record whatever agreement there was in the divorce regarding this residence? There's no dispute between the parties that Roland Pour, Sr. owns the house. There's no dispute about — Well, the ex-wife lived there occasionally. That's — There was an ex — it's not in the record, but Roland Pour had several — It's in your briefs, Counsel. Yes. Yes. No, he had several ex-wives. One of them was living at the house. Is there anything in the record whether Mr. Pour consulted with his insurance agent in the wake of the divorce and moving to Georgia? No. Don't you think that would have been relevant? Under the definition of residence premises in the case law in Minnesota, I don't believe that is relevant, Your Honor. The definition of residence premises in the policy, as has been briefed before the Court, says the residence premises where you reside. Now, is — under Minnesota case law, all the words in a policy have to have meaning? It's the insured location is the definition of residence. That's — that's — that's purposes. The definition of residence premises, which is located — well, it's briefed throughout our papers, says the residence premises where you reside is shown in the declarations. Now — But Counsel, it plainly says, insured location means the residence premises. Yes, it does. Yes. Go ahead. They're synonymous. Insured location, residence premises, is — I don't care about Minnesota law. They're synonymous for this case. Yes. The residence premises is incorporated into the definition of insured location. No, it means the same thing, Counsel. It's the same thing. That's the only way to interpret the policy. If we're — Your Honor, maybe I'm misunderstanding. Are we discussing the definition of insured premises, or are we discussing the definition of — Insured location. Insured location. Yeah. Okay. Exhibit 1, page 8, subparagraph 4 of the definitions. Yes. Residence premises is incorporated into the definition of insured location. They mean the same thing. Yes. I use the term mean. And this is why your briefing is not all that candid about this policy. Because the — this case was denied because it wasn't role important at seniors' residence premises. Right. Yes. Because — Yeah. If you are referring to the argument about there being — where it says stated in the declarations that they use the word insured location. Yeah. Okay. Your Honor, I'm going to — I'm moving on, B. That argument, yes, it's incorporated there into the insured location reference. Insured location, same as mailing address above. As — Champlin. As it relates to that, the definition refers to the insured location and to the declarations. My argument in the first part of my argument here refers to the definition of residence premises in and of itself. Well, you can't ignore the one that's right beside it, four and eight. Insured location? Yeah. If I'm going — if the focus right now is on the illusory argument that there is no coverage, one, it is incorporated into the — It's not illusory. I'm sorry. It's not illusory. Then — All he had to do was talk to his insurance agent and make sure that the move in leaving the insured location in his ownership but not as his residence would not cause coverage problems in the case of a calamity such as a fire. And I can be pretty sure an agent would have said, you need to do something about this. You need a policy writer or revision or whatever to cover the possibility because you've agreed with your former wife that she can live there and you'll still own it and pay all the upkeep. Under this policy, the use of the word reside and where it is, is the house is still covered for will and poor senior because the residence premises is a description of the house. It is not a condition that he has to continue living there. It is his only house. He was not renting it. His family was living there and he continued to own it. But that's where we get into your argument, where you reside. Yes. So when you talk about residence, whether it's for tax purposes or whatever, and there's a long line of cases in Minnesota on what your tax residence is, you actually have to live there. I mean, just plain and simple, to reside somewhere, you have to live there. And there's no evidence in the record that for the previous two years, he had resided there, other than the occasional time when I think it was one or two times like a weekend or something where he had actually lived there or stayed there. As you get into the policy and you get into that phrase where you reside, now under Minnesota law, each phrase in a policy has to have meaning. And it's repeated in the definition of residence premises, but then it's repeated again after the phrase residence premises later in the policy. It can't be redundant under Minnesota interpretation of an insurance policy. Those two phrases have to mean something. I think that this policy was taking into account Airbnbs and verbos and stuff like that, which is to say that you can own the property, but if you're renting it out to somebody else or somebody else is living there, that is a risk that we didn't assume on the front end. Now, I understand this is different, but you have the exact same problem in some respects, which is it's not owner-occupied. He's essentially done the equivalent of renting it out to his family members or his kids. And so I wonder, reading it as a whole, that's exactly what it's trying to do. And so I guess I don't understand why there's a redundancy if that's what it's covering. Well, those are the phrases that they use. But the language of where you reside comes under the loss of use section. It doesn't come under the — there is a section in here. I don't have it in front of me right now. But where you reside is in the definition also, counsel. It's in the definitions under 8, where you reside. Under the definition, section 8, it says where you reside. Yes, Your Honor. Yes, for sure. And notice it doesn't end with where you reside, in which is shown as the residence premise in the declarations, which gets you back to insured location across the column there. Yes. Do you know what I'm saying? Yes. The hallmark of this case — the denial for the lower court and the denial — or the denial of a semi-judgment below the — in the district court and the basis for the denial was that this was not the residence premises because Mr. Poore Sr. did not reside there. If Mr. Poore had made this a Vrbo or an Airbnb, would you be making the same argument? No, because — Your Honor, and I will come back to it. I'll look for it. But there is a section in here about short-term rentals in the policy, which is different than the loss of use, which would cover — which covers the fair rental value or the additional living expenses in case of a loss like a fire. And that's coverage D, loss of use. Suppose he had charged rent to his kids. Would you be making the same argument? Still family members. He owns it. But he says, I want a couple hundred dollars a month. I think that is a different argument, Your Honor, because in and of itself, renting or a landlord policy or renting, there's the inherent idea that you're charging something for money. That wasn't the case here because his relatives were living there. And they were living there before he moved out, and they continued to live there afterward. So in that respect, there was no change. He was getting the tax breaks on the home, right, counsel, to the extent there were tax breaks? He was filing his taxes as — with the home, yes, Your Honor. Yeah. But he was getting tax breaks from it. Does that count as rent? No, because it's the only home that he owns. Is that in the record, counsel, before we go too far afield? His tax records that he was filing for the house, yes, that is in the record. Okay. Well, did he claim interest, mortgage, taxes, the Minnesota taxes? Did he take them off his income tax? Yes, and he also considered himself embezzling. How is that — can that be called rent? Because those are tax breaks for the house that he was owning. It's — I don't consider that rent, Your Honor, because he wasn't receiving that money from the people living at the house. Go ahead. That was my — No, proceed. What about taking care of the house? Presumably his kids were taking care — I don't know if it was a mess. That's not in the record. But if you take care of the house, it's like you're paying somebody to live there, like a house sitter. Could that be the consideration in exchange for him not living there and his kids living there in his stead or his family members? Well, the — this is in the record. The utilities are switched over to the kids. That — if we're getting into informal situations of rent, I don't believe that that is. When you have a familial relationship like this, this doesn't fit into the clear boxes that people look at when you think of rent. This is a family living at a family home. It wasn't a rental to a third party, and it wasn't Mr. Poore charging his kids to continue living at the house. That in and of itself doesn't denote or connotate that the landlord policy should cover this house because his family continued to live there. And when Mr. Poore Sr. lived there, his kids were covered under the policy as insureds. There was no change in — other than Mr. Poore leaving. And under those circumstances, there should be — there is coverage for this house because nothing materially changed between the time Mr. Poore was there and the time he moved to Georgia. His kids continued to live there. I have three minutes. Except he wasn't residing there. With the different uses of that. I mean, there's no difference. That's — that is the difference, that there's coverage for the injury or loss to the resident premises where he resides. Right? Under the definition, now — but then I get into the — but with the construction of that — the phrase of that use, where you reside, when it comes to the loss of use, those are two different phrases that have to be given meaning. And in the definition section, it's a condition. It's a description. I'm sorry. And in the coverage decision, it's a condition. And that is the difference between those two phrases and the use of it in this policy. And for that reason, Mr. Poore Sr. is entitled to coverage under the structure portion of his house. I have two minutes left, Your Honor. If you have any questions, I am free to answer them. But I would like to reserve that time for rebuttal. Thank you. Thank you. Mr. Berglund? Good morning, Your Honor. Are you okay at the — we can make this as convenient as possible. I know. I do have doctor clearance to put a weight on my legs. So I think 15 minutes, I should be all right. Okay. Well, you can adjust that any way that works best. It goes up and down. You probably know. There's a button. Well, yeah, it's on the right side. In the middle. You know what? I think I'm probably okay here. Okay. We'll give it a go. Yep. Good morning, Your Honors. May it please the Court. My name is Daniel Berglund, and I'm here today on behalf of Liberty Mutual Personal Insurance Company. First off, I'd like to begin by thanking the Court and also Mr. Hagedorn for your patience. I know that this was probably supposed to be on your calendar about three months ago. But it's been a little battle to get here to be physically present, and I'll spare the Court with the details. But suffice it to say, I didn't fully appreciate the consequences of mixing lawyer and chainsaw. And, you know, as I've spent some time reflecting about this case while I've been convalescing, I think it's probably fair to say that the poor circumstances here are similar to mine. This case is also about unintended consequences. Because I think if we're being intellectually honest here, I think this dispute really isn't about residency because the evidence doesn't support residency in any evidence that Mr. Poore was residing in the home at the time of the fire. I think the argument's really about who should bear the responsibility for the fact that Mr. Poore didn't consider whether there would be any ramifications. Counsel, it borders on jurisdiction, so I've got to ask you. What's the status of the personal property claim? Well, actually, you know, we were actually just discussing that. We have Liberty Mutual has paid everything except for one line item that Mr. Hagedorn identified about two weeks ago. That is in the process of being processed. So for all intents and purposes. So you, Counsel, are telling us there's a settlement of the personal property claim. That is correct. Because I was worried about its jurisdictional effect in this case. Absolutely. Absolutely, Your Honor. That should, I think, that issue is moving.  We'll get him to say it's settled. Yes. I wanted to ask you because this is a Minnesota issue, which is snowbirds. So you have a situation in Minnesota tax law. It's essentially where you live the majority of the time. But what, would your rule extend to a situation in which somebody spends, let's say, 250 days in Arizona or Florida and 115 days in Minnesota? And the rest of the time, maybe they have a child living there. The child lives with them when they're there. But the child lives with them also when they're gone. Would you say then that there's no residence in the premises? And what do we do about that? That is not the way Liberty Mutual would treat that. Basically, the rule that Liberty Mutual follows here is that there is some evidence of permanent residing there. So you don't have to be there continuously, but there has to be some evidence that you use it as a home. So say, for example, if you have a cabin where you only go up on weekends in the summer, that's still a residence premises because you always intend to come back. And that is the difference between what we have here and those normal secondary houses because in this case, Mr. Forb basically acknowledged, I moved out. I have some things stored here, but when I come back, maybe I'll sleep on the couch, maybe I'll sleep in my son's room, if I visit at all. And in the year preceding the fire, he didn't spend any nights in that home. He had moved out. Well, I thought about Judge Strass' question. It seems to me the answer is we don't know. Well, you say what the principle that Liberty Mutual follows, but we don't know that from this record. And I don't know if you can – maybe you've got 20 Liberty Mutual cases from around the country that would support that, but it doesn't matter because in the Snowbird situation, you wouldn't get summary judgment on the same basis it was granted here, I don't think. That is probably correct, Your Honor, if they were to deny it on Snowbird. This is not 250 and 115. This is zero and 365. That's 100% correct, and that is the reason that Liberty Mutual denied it, because of that zero. I don't think we have to get into whether Liberty Mutual would do the right thing. You know, there's a State Farm case in the Seventh Circuit that cited where they took a pretty dramatic all-or-nothing position. And you don't – I mean, you just say they're assuming that we only do all-or-nothing. That's not true. That is correct, Your Honor. That's exactly right. And you see that argument kind of floating throughout the briefing of the poor is this continuous occupancy requirement, but Liberty Mutual doesn't require it. There just has to be – it has to be more than zero. And so with that said, you know, I think that the Court is dead on with respect to what the language of the policy says. It says where you reside. It doesn't say where you once resided. It doesn't say where people other than you reside. And it doesn't say where you store your things. It says where you reside. It's present. And so there's no ambiguity here, and it's not illusory. That's just simply what the policy says. That's the terms and conditions. One argument that I did want to address, because it showed up in the reply brief, and I don't think it had ever been raised before, and that is this argument that there's a requirement for an increased risk. And Mr. Hagedorn cites that valued policy provision. What page are you on, counsel? Oh, the brief. I thought you were looking at it. I'm actually looking at my outline, but it's actually in his reply brief. There's a reference to the Minnesota valued policy provision. Yes, proceed. And I was looking through that, and I don't think that that argument was raised to the district court, so I'm not sure if it's proper here. But with that said, I don't agree with the argument that's raised in the brief that Liberty Mutual hasn't established an increased risk under the circumstances of this case, because Liberty Mutual issued a policy based on an application when Mr. Poore stated that he resides there. Now he doesn't, and there's kind of this revolving cast of characters that's living there, and if you look at the transcript that we provided. Well, counsel, it's not too revolving, but go ahead. Well, it actually was. Go ahead. Talk about something more. Sure, sure. In our rhetoric. Sure. But some of these people were related to Mr. Poore. Some weren't. And Mr. Poore, in his deposition testimony, stated that he wasn't exactly sure who was living there at any given time. So my understanding at the time of the pot fire, there were seven or eight people living in this three-bedroom house, and there was a closet in the basement being used as something other than a closet in the basement. So he says that we don't have any admissible evidence that shows an increased risk, but I do believe that there is admissible evidence there. And, you know, the property was being used like a rental property. I know it was family members, but it was being used like a rental property. Suppose, though, that I'm asking a slightly different hypothetical. Suppose that in the year preceding, for whatever reason, he never made it up, but nobody else was living there. How would the policy apply in those circumstances, where you don't have any third party? I suppose you could argue that there's increased risk because a pipe could burst and you wouldn't be there to turn it off or call a plumber, but how would that policy act or apply when no one's there for a year? Well, there is actually a vacancy provision in the policy as well. So I think you have two applicable policy provisions, and you have the residence premises provision, which basically takes it out of the definition of a residence premises, but then even if it were considered a residence premises, you have a vacancy provision as well that would preclude coverage as an exclusion. Vacancy would preclude coverage? There would be an express exclusion because of the vacancy provision, yes. Does it have a time period, counsel? I believe it's 60 days for vacancy. That's tough on snowbirds, if you're talking about January, February. Just saying, I mean, this is the policy, but that is tough going back to the snowbirds earlier. Sure, sure. That is true, and I guess it is what the policy says, but I think there probably can be riders that you can add in amendments and endorsements if you provide that information to the insurers. Basically, I just kind of want to finish this up here by noting that the heart of contract precedent, not only in this state, but throughout the country, is this general principle that if you enter a contract, there's an assumption that each party is familiar with the terms and agree to be bound by them. And that's true with insurance policies, and I think we all know that. There's this presumption under the law that an insured understands the terms and conditions of the coverage that he or she has. And that's true regardless of whether they actually read the policy and understand the policy, because otherwise these pillars of contract law just start crumbling. And that's really the prism that we have to look at all of these arguments through. If a policy term is clear and unambiguous, we have to look at that policy's specific language and determine the party's rights and obligations from it. If it's unambiguous, what the insured believes becomes secondary to the language itself. And in this case, the policy defines and conditions coverage for the home as a resident's premises. Is the full policy in the summary judgment record? Yes. It is our appendix, the beginning of our appendix. And does it reflect whether Mr. Poore was represented by an independent insurance agent? I believe he submitted it electronically. He what? I believe he submitted the application electronically, if I remember correctly. So dealing directly with the company? Yes. Yes. I'm assuming the term domicile is not anywhere in the policy, right? Unless it is in some language that is completely inapplicable here, Your Honor. It is resident's premises. And occasionally the term dwelling is used. Dwelling is used. Dwelling, yes. Thank you. Yes. You know, I wanted to ask, too, there is one way. I don't know that this is a better reading of the contract to the insurance policy, but there is one way Poore could win. And you heard some of the questioning earlier of opposing counsel, which is if this was merely a description of the property. So it's not a condition. It's not an express warranty. It's merely a description of the property. And, of course, the insured location, I think, is listed as the Champlin home. And so if it's a description of the property, then it's not a condition of coverage, and therefore he wins. Well, that is the argument on the other side. And I would urge the Court to look at, you know, Judge Loken, you mentioned in that prior case that ancient law was 20 years old. And if you look at the law that Mr. Hagedorn is citing here, you're talking more like 140 years old. I don't think that other than one case that strictly relies upon a older case, there is no case within the last 40 years that's cited for the proposition that the insurance apply the residency is only required at the time of the application. If you look at everything that's been cited, if you look at Heininger, if you look at Giroux, if you look at Blake, all of these are cases that have been decided in the last 5 or 10 years, they say, well, that doesn't make any sense. And that's what the district court said here as well, is it doesn't make any sense for the insured to have a residency requirement at the time of the application and then not care how that property is being used after it. And I think that that's more the correct way to look at it, Your Honor, and especially when you look at the language in this policy as well. It doesn't say where you resided at the time of the application. It says where you reside. And that is current, and I think that shows that there is this ongoing obligation to reside there. It's a homeowner's policy. So the assumption is that you continue to own it and reside in it, and that's how the definitions of it, and that's also in the coverage grant in Section 1, it says resides. So unless the Court has any further questions, I will cede the rest of my time. Thank you very much. Thank you. Mr. Hagedorn for rebuttal. Yes, Your Honor. Judge Benton? Yes. We have reached an agreement on Burlingpore Senior's personal property. And so you drop 0.6 of your appeal, right? Yes. Thank you. Proceed. Yes, Your Honor. And Judge Strauss, coverage D, Section 2 would refer to the short-term rentals. That has to do with the loss of use. I don't believe that section addresses short-term rentals. Your Honors, now, even though the case was 140 years old, the principles still stand and it has not been changed. Those are basic interpretations of contract policies that had to deal with the language used in an insurance policy when it insured an item or a property or a personal property. The court, the Minnesota Supreme Court, in those decisions, one is Strauss Detroit Lumber Works. The others are Aetna v. Groob and Everett v. Continental Insurance. Those cases stand for the proposition that in an insurance policy that specifically labels something as a sawmill or a thresher stored in a barn, that those are mere descriptions of the property. Now here, if the phrase where you reside had only been kept in the definition section, perhaps that argument wouldn't work. But it's used in coverage D and it's repeated, and it has to be given that meaning. Does it make a difference, though, in terms of the representation, that perhaps each coverage year that's a repeat representation? So in other words, if it switches over in September, you're saying, again, I am residing there when the policy starts, and does that pose a problem? It goes back to the idea that from the beginning, there has to be a change. If there's going to be an exclusion for coverage, it has to be strictly interpreted against the insurance company. And without a material change in the increase of loss, that can't stand. I see that I'm out of time. For the reasons I asked, I ask that you reverse the district court and grant summary judgment in Roland Pour's favor. Thank you. Thank you, Counsel.